Good morning Your Honors. My name is Traeger Mockatons. I represent The Hartford. I'm a This is an appeal that arises out of a soils remediation project in a MacNac, Alaska. Jacobs Engineering was the prime contractor on that project. Jacobs entered into a subcontract with Southeast Contracting to provide soils remediation. As part of that contract, Hartford was required to post a subcontractor payment and performance bond. Also, in support of that contract, Southeast Construction entered into a 12-month lease with Fong for a remediation system, the HAVS system, on June 1, 2000. Subsequently, in mid-September, September 20th, Southeast advised Fong and Jacobs that it would be abandoning the project. In fact, on September 22nd, Southeast was terminated from the project by Jacobs' default termination, ceasing all contractual performance obligations. Subsequently, Fong brought an action against the Hartford for all rent for the 12-month lease, although the project was terminated well before the cessation of the lease. Hartford subsequently moved for summary judgment on the issue that the scope of bond Fong, in turn, cross-moved to assert that the entire period of the lease performance was covered by the bond. The Court at that time declined to rule on this issue and allowed further discovery to proceed. Subsequent Counsel, were the motions actually dismissed without prejudice at that time? I believe the motions were continued at that time so that a 56-F additional discovery could be conducted on the issue of whether Fong was a joint venture with Southeast Construction. After the period that the discovery had concluded and closed, Fong then renewed its summary judgment motion and, in doing so, addressed law regarding the joint venture issue and incorporated the prior briefing, including the conditional opposition filed by Hartford to the original motion and necessarily the original moving papers by Hartford, which were frequently referenced in the original cross-motion. But a second motion for summary judgment was filed by Mr. Fong. I believe the caption of that motion was renewed motion for summary judgment and addressed the specific issue left open when the 56-F motion was granted specifically whether the – whether there was a joint venture. Ultimately, the Court ruled on that motion, finding the Fong motion unopposed. In fact, the – Is there a reason – I take it there was nothing filed specifically in response to the renewed motion. No, there was not, Your Honor. Is there a reason why nothing was filed? The reason why nothing was filed, and I must surmise this, was because the second motion primarily focused on the joint venture issue. Hartford was not able to find any – or did not develop any evidence regarding the existence of a joint venture. So the issue of bond coverage had earlier been addressed in the preceding motions, and they felt that it had been adequately covered then. Now, as I noted, the past pleadings included – I'm sorry to interrupt you, but I was still not clear. Are you saying that it was renewed, A, on a different issue that wasn't even raised in the first motions, i.e., joint venture, and, B, although it was renewed, they weren't renewing the earlier issues that were before the Court but deferred? Let me see if I can explain this to you. The original two motions went to the scope of bond coverage, the precise issue here. The judge, when he entered his order, said, I'm not going to rule on this now because there appears to be an issue of whether Fong is in fact even a proper bond claimant on this, and so I'm going to allow further discovery on that issue. At the close of discovery, Fong renewed its original motion and also addressed the issue which was brought up by the Court, i.e., whether a joint venture existed. But on the first issue, they raised nothing additional. They just said we're still – we still want that, but here's some information about the second issue. To the best of my recollection, they raised nothing new on that. That issue was pretty clear. It's a pretty clear legal issue. There's no dispute regarding the period where the lease ran and when Fong was – or when Southeast was terminated and what the language of the bond coverage was. So the Court, subsequently receiving Fong's renewed motion, entered an order which stated that they felt that the motion was justified. They noted it was unopposed and granted summary judgment. And from that, we appeal. Now – It didn't stop there, though. As I recall from the papers, you or your firm or whomever was representing Hartford at the time filed a motion for reconsideration. Is that correct? Yes. And it was deemed untimely by the district court. That is correct. Looking at a copy of the order from Chambers that's contained in the excerpt of record, it appears to come from your office files. And stamped there, it says DACA to due date 7502, motion for reconsideration. And yet no – so apparently there was an understanding that a motion for reconsideration would have been due by that time but was not filed by that time. That is correct. Is there a reason for that? No, there is no reason for that. Does that by itself give the district court basis for saying, well, file a motion for reconsideration on time, I don't have to listen to what else you have to say? No, Your Honor. I don't believe it does. A motion for reconsideration is simply an elective decision. The – Hartford did not have to cover all issues raised in the underlying motion in its motion for reconsideration. It felt it had fairly addressed the issue of lease coverage in the original motion papers, which were incorporated into the renewed motion. In its motion for reconsideration, the Hartford briefly touched upon that and primarily focused on the damages issue. But the fact that they didn't raise all issues in the motion for reconsideration or even whether or not they filed a motion for reconsideration does not affect their right to appeal this issue. A motion for reconsideration is not a condition preceding to filing a notice of appeal. I don't think that's the point. I don't think we're quarreling with your right to appeal. The question, as I understand it, is having waived the opportunity to file a motion to reconsider the order in judgment which you are now appealing, does that impact the propriety of the trial court of saying that his ruling that it was unopposed was not reconsidered, wasn't requested to be reconsidered? I don't believe so, Your Honor, because I believe those issues were necessarily in the underlying motion. And I believe the appellee agrees with us at pages 13 and 14 of its argument, where the appellee indicates that the judge must necessarily have considered the underlying motions or the underlying issue in the conditional opposition. And what the court meant by this motion is unopposed was simply that no supplemental opposition was filed in response to the renewed motion for summary judgment. I'd like to ask a question about the merits, assuming that it was opposed and that we're looking at the question of whether Hartford was liable for the entire 1-year term. What effect does the remedies clause of the lease have, paragraph 13, that provides that in the event of a default, the entire amount of rent can be declared immediately due and owing? My belief, Your Honor, is that that entitles the claimant to seek the full rent recovery from the underlying lessee. That would be Southeast Construction. But the bond itself only relates to the ñ is specifically limited to those materials, labor and equipment used or reasonably required for use in the performance of the contract. So your position is that once the default has occurred, it's not being used in performance of the contract because the contract's not being performed, nor is it any longer reasonably required for use in performance of the contract because it's not being performed. That is absolutely correct. Once contract performance ceases, the surety's bond obligation ceases. And we've cited several cases that stand for that proposition for purposes of calculating when the 90-day notice period begins to run after you last provide goods and services to a project. And I believe those, although they are Miller Act cases, are analogous to the bond at issue here. Now, the ñ The timeline for the project, was it such that one year was a reasonable period to rent this equipment and anticipated it would be used for a year? I would believe it would be. The period was a lease for one year, and there were options, if the project was running later, that they could renew on a month-to-month basis. The fact of the matter is, though, that Southeast was default terminated early in the project. Now, the appellee has talked about ñ seized a distinction between reasonably required for use in the performance of the subcontract. Our argument, of course, is that once the subcontract ceases, the underlying period ceases. But what is reasonably required for use? He suggests that it may be in some future point in time, even after subcontract performance. I believe the proper analysis for that is instances where a piece of equipment might not be in actual use during the period of subcontract performance. For example, a contractor brings a water truck onto a project. Now, the water truck may not be used every day, but when it gets dusty, he may have to use his water truck to water the project. That would be reasonably required for use during the period of performance. Counsel, when you began your remarks, did you refer to this bond as a payment and performance bond? Actually, I misspoke. I would say it is a payment bond. It is the Hartford Payment Bond. It's not a performance bond? No. I believe they posted a separate performance bond. Suppose for some reason the project had stopped independent of the financial difficulties of Southwest. In fact, let's say, suppose it was the developer, the owner's financial problem that caused cessation of further efforts. Is it clear under mechanic lien law in Alaska whether a mechanic's lien could have been obtained to cover the balance of the rental payments that would have been due? I do not believe it is not clear in Alaska on that subject. I would suggest if, for example, there was an owner termination, then the proper remedy would probably be under a termination for convenience clause and the contractor would be entitled to recover all subcontractor amounts, owing, et cetera, and reasonable profit on unperformed work or maybe not, depending on your T4C clause. But for the bond, the bond is limited to the period of contract performance that's necessary so that the bonding company can clearly establish what its requirements are going to be. If a subcontractor is terminated, for example, another one takes over, this bonding company should not essentially have that tail obligation for an entity and its lower tiers who are no longer working on the project. And in this case, with the termination, the lease obligation ended. I see I only have a minute left. If possible, I'd like to reserve that for rebuttal. Thank you. Mr. Marston. May it please the Court, my name is Terry Marston. I am the attorney for the appellee in this action, Fong Incorporated. Fong was an equipment lessor and it wasn't just any type of conventional equipment. It wasn't a cement mixer or scaffolding, the type of thing that is leased on a day-to-day or even month-to-month basis. This was hot air vapor extraction equipment, very rare equipment, very expensive equipment, and not equipment that is frequently in demand. For that reason, when this lease was entered into with Southeast Construction, it was, and this is very significant for your construction of the obligations of the parties in this case, it was a lump sum lease for one year. It was a per month payment. If you will look at the lease document itself, and I have handed copies of it. No, I've read it previously as well. It provides for a payment of $31,000 per month for a certain number of months, and then $20,000 per month for a period thereafter. And the other thing that I notice about it is that when it talks about lease payment, it has a beginning date for equipment in service. Okay. So, yes, there's a lease term, but it's also divided up by monthly payments. I respectfully disagree with that. What you are referring to is the financing provisions. Rather than obligating the lessee to make the entire $306,000 payment at one time, the lease provides for making installment payments on that. However, if the court draws its attention to page 47 of the record on appeal, the first page of that lease agreement, paragraph 2, it states that the lease term and rental payments are specified in the schedule below. The schedule is, in fact, the last page of this document. If you look directly beneath the table where the financing terms are described, it identifies the actual term of the lease, initially one year, thereafter month to month. In addition to that, if you look at paragraph 6 on the first page of that lease, it states in unequivocal terms, this is a non-cancellable contract of lease. Therefore, I don't think that there is any reasonable argument can be made that this lease was not a lump sum one-year lease, albeit allowing for installment payments to be made to ease the process of payment. I'm not sure that answers the question, though, because Hartford was not a party to this lease. The issue really is the terms of the bond. And their logical position is that once there's been a default by Fong saying, I will no longer perform, that there is no longer equipment in use, literally, it's not in use, nor is it any longer reasonably required for use because we know there will be no use. What's wrong with that? The error in that is with the starting premise, and that is, what is the bonding company's liability? And as we pointed out ---- Whatever it agreed to, isn't it? Whatever it agreed to is its liability. So it's a matter of contract. It's a matter of contract, but it's a matter of how you construe this contract. And there are very special rules for how you construe a contract that's drafted by a compensated surety. As we pointed out in our brief, there's at least ---- Not compensated by your client and not a contract with your client. It is, in fact, effectively a contract with our client, as our client is a third-party beneficiary of the bond. Well, as I understand a payment bond, it's really designed to protect the owner of the property against lien rights asserted by somebody else. That is one purpose of a bond, but it's certainly not the only purpose of a bond. In fact, in this instance, there was no bond requirement by the owner of the property. The owner of the property was the Federal Government. The general contractor on this project was a firm known as Jacobs Engineering Group. It was Jacobs that required in its own subcontract with Southeast Construction that Southeast Construction provide a payment and performance bond. But those payment and performance bonds, while being required by the general contractor, perhaps out of its own self-interest, was clearly for the purpose of protecting the providers of labor, equipment, and material on the project. And that was clearly the intended beneficiary, as you read through the document itself. Mr. Marston, are you saying that Jacobs required Southeast to get labor and materials and a performance bond? I'm not going to ---- You said performance bond. That's the second counsel in this case that has told us that you have a performance bond involved. I'm trying to get this understood. Is it your position that there's a performance bond here? Performance bonds generally run in favor of Jacobs Engineering itself. I'm just asking you, was there a performance bond here? Did Hartford issue a performance bond? Yes, it did. Is this a performance bond? No. This is a payment bond. But the only thing that's an issue before us is a labor and materials bond, right? It is the payment bond that's in the record here. That's correct. That's the same thing. A labor and materials bond is a payment bond. Yes. Not a performance bond. That's correct. Now, again, getting back to the way you construed these documents, and that is that a statutory Miller Act bond is construed in accordance with one set of rules, namely divining the intent of Congress. On the other hand, private common law bonds are construed in a manner to divine the intent of the parties to that agreement. But even non-private bonds, there's two different categories. One is the accommodation bond where somebody, for instance, agrees to co-sign for the purchase of a car, or a compensated bond, such as Hartford, where Hartford makes its income by selling bonds to people. In these circumstances, Hartford has not only the power because they draft the agreements, the financial interest because this is their business, but the courts put upon them the duty to draft these things in a clear and unequivocal manner in the same way that insurance providers are required to draft those forms. Sotomayor's Court has offered an interpretation that seems perfectly natural and a perfectly plain interpretation of the text, which is the starting point for the interpretation of any contract. So regardless of the fact that it's a compensated surety, if we find that its reading is the appropriate reading of the text, where does that leave you? That only is part of the interpretation because as a compensated surety, any ambiguities in its document have to be construed in favor of the non-drafting party, in other words, Paul. That assumes that there's an ambiguity. No. That creates the question, are there any ambiguities? My question to you was if we were to find, and I know you don't concede this, but if we were to find that the bond is not ambiguous and that it means what Hartford says, isn't that the end of the discussion? There are no other rules of construction to apply in that situation. I think that would be the case, Your Honor, although you change your question in a significant point, and that is that you added in there, if we find there are no ambiguities. I understand you don't concede that, but. Right. My view is that this is not an ambiguous provision. My view is that it can clearly be understood to mean that anything that is used or reasonably required in the performance of the contract, not during, but in the performance of the contract. But what performance of the contract? It talks about the scope of the work. Before I start a contract, I can identify that I'm going to require a backhoe in the performance of that work. That identifies the scope of the work, not the duration. If, in fact, Hartford wanted to comment on the duration of the work rather than the scope, they had the power to do that. They could say clearly, as they're required by law to do, that this bond only applies to amounts that or the value of things during the performance of the contract, and once the contract is terminated, it doesn't apply any longer. So I guess there's two ways to answer your question most correctly. The first way is bring to mind our representation in the court that this is a lump sum contract, that once they use this piece of equipment on the project for even a day, a month, the entire fee was earned. So irrespective of how that particular passage out of that bond may be interpreted, there's no dispute that this was a lump sum contract. In fact, if you look at page 14 of the appellant's opening brief, they concede that this was a one-year contract. Counsel, would Mr. Fong have been within his rights as a business person before he made a contract with Southeast to insure, to insist that Southeast insure their payment of that contract? Could Fong have insured the payment of that contract? Not insurance per se, because insurance deals with casualty losses. But I think what you're asking is can they have required some type of guarantee of performance. And, yes, that is, in fact, what a bond is. Well, now, wait a second. That's the issue, I guess. But do you concede that it is available as a device for Fong to guarantee to obtain a guarantee that that contract will be performed and paid for? Only in the form of a bond, Your Honor. I know of no other way to guarantee performance other than to obtain a surety. And that would be a performance bond, wouldn't it? No, Your Honor. No. Let me be very clear about this in terms of the terms of art between a performance bond and a payment bond. A performance bond is something that goes up the chain of privilege. In other words, a performance bond is a guarantee that the work, either the provision of labor materials or equipment, will be done. And if a party purchasing that, the party that's paying cash, doesn't, in fact, get that, then the bonding company will step in, will either complete the work or pay for the cost of completion. That's a payment bond. Excuse me, a performance bond. That's a performance bond between two contractors. We're talking about some kind of a contract between the lessor of equipment and the lessee of equipment. There is no meaningful distinction between the nature of a payment bond, between a lessor and a purchaser of or a renter of that equipment, and, for instance, an owner who buys construction services. The bond forms are, in fact, the identical bond forms we're looking at here. The difference between a payment and performance bond is one guarantees that an amount that is agreed to be paid will be paid. That's for somebody who's buying services, labor, equipment, or material. A performance bond is something that guarantees that somebody who's going to be providing services, labor, equipment, or material, will provide those to the person who is to be paying them. How much time do I have? Okay. Getting back to the concerns that you had, Your Honor, you asked me the question, if we find that this language is unambiguous and that Hartford's interpretation is a reasonable one, doesn't that end the discussion? The answer is no, because as I started to say, this is a lump sum, single premium contract. So once this material appeared on the job, Manchester Southeast Construction was liable for the entire sum, whether you used it for a day or a year. Therefore, because they compensated sureties, obligations are commensurate with that of the bond principle. At that moment, Hartford became liable for the entire amount. So that wouldn't answer the question. Is that clear? I understand your position. Okay. And in addition to that, we get back to the question about whether there is, in fact, well, your position was, if we find, your first question, rather, was if we find that Hartford's interpretation is reasonable, and I was about to say, then that leads you to the next question. You must next ask yourselves whether Fong's interpretation was reasonable, because if we have two reasonable interpretations of this language, then as the claimant, Fong's interpretation must prevail. And the law is clear, absolutely clear on that. Where a compensated surety has issued a standard form of bond, it is to be interpreted liberally, and all ambiguities are to be resolved in favor of those whose benefit the bond is given. Now, we have a declaration from the bond company's own principal, Mr. Manchester, saying that this equipment was used in the project and was reasonably necessary in the performance of this contract. And the only way that you could determine, you know, leaving aside the single premium issue, the only way that you could determine that Fong's interpretation would not prevail is not only that Hartford's was reasonable, but that Fong's interpretation was unreasonable. Now, the district court below obviously reached a different conclusion on that point because they granted summary judgment in favor of Fong. And I submit to you. The point you started out by making that ambiguities have to be resolved against the insurer. That's right. It's the same argument, because you're saying if the bonding company's interpretation is reasonable and Fong's is reasonable, if you have that situation, you obviously have an ambiguity, don't you? Exactly so. So you're back to your point that you made before? Yes. Well, we understand your point. Okay. Unless you have any other questions, I thank you for your time and consideration. I think we don't. Thank you. Thank you. You have some rebuttal time in the afternoon. And when you're finished with your rebuttal, I'd actually like to know from both counsel. I know the parties have made a very concerted effort to try to settle this case. And if counsel could let us know whether you wish us to go ahead. You don't have to do it from the podium, but let us know afterwards and let the clerk know if you wish us to go ahead and submit the case or if you want any more time with the mediators. You don't have to tell us in open court, but let us know that. Thank you, Your Honor. I will necessarily be quick. First, you'd ask whether there were alternatives to a payment bond which Fong could have sought to obtain for security. One example would be an irrevocable letter of credit. If they had wanted to protect the entire lease payment rather than, for example, simply the period of performance. Second, once a subcontract is terminated, there can be no further in performance of contract, which is the clause here. Therefore, it doesn't matter whether it's use or reasonable use. It can't be in performance of contract. Third. It's already been in performance of contract. It has been, and it should be compensated for that period when it is in performance. But once the contract ceases, there can be no further in performance. Third point, distinction between private bonds and Miller Act bonds as to compensated charities is a distinction without a difference. Both the statutory bonds and the private bonds are construed liberally. Finally, established law that the bonds coverage is not necessarily synonymous with the principal's coverage. It can be coextensive or it can be less, but in no event can it exceed the principal. Exposure. Thank you. Thank you, counsel. We appreciate the arguments of both parties. The case just argued is submitted. But we'll await your word as to whether we'll continue to keep it as a submitted case. Thank you. We'll turn next to United States v. Four Star.
judges: Graber, Tallman, Brewster